UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION


**ALUMINICASTE FUNDICION DE MEXICO,
SOCIEDAD DE RESPONSABILIDAD
LIMITADA DE CAPITAL VARIABLE**                                              **Plaintiff**


vs.                                                              No.        3:16-cv-071-MPM-RP

**ALUMINUM EXTRUSIONS, INC.**                                                          **Defendant**


**ORDER**

This cause comes before the court on the motion of plaintiff Aluminacaste Fundicion de Mexico ("Aluminicaste") for partial summary judgment, pursuant to Fed. R. Civ. P. 56. Defendant Aluminum Extrusions, Inc. ("AE") has responded in opposition to the motion, and the court, having considered the memoranda and submission of the parties, concludes that the motion is not well taken and should be denied.

This is, in most respects, a rather straight-forward civil action in which plaintiff seeks recovery for a large quantity of aluminum billets which, it contends, it shipped to defendant. For its part, defendant does not deny having received the vast majority of the aluminum at issue,[1] but it argues that there are extenuating factors in this case which should, at the very least, limit plaintiff's recovery. Plaintiff disagrees, and it has accordingly filed the instant motion for partial summary judgment, arguing that it is entitled to the full $1,700,062.53 which it claims to be

---

[1] As discussed below, defendant does deny receiving a small portion of the goods which plaintiff maintains it shipped.

1

owed, without the necessity of a trial. As explained below, however, while this court has some sympathy for plaintiff's position, it is not prepared at this juncture to simply award it the full amount in damages which it seeks.

In the court's view, there are several reasons why it would be unwise to simply render judgment in plaintiff's favor. First, on a fundamental level, motions for summary judgment in which a plaintiff is seeking to be awarded a specific sum of damages, before trial or even a hearing, tend to be ones which courts are most cautious in granting. This is particularly true in a case where the plaintiff is seeking the hefty sum of $1,700,062.53. Indeed, this court notes that, even in default cases, "a judgment by default may not be entered without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation." *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). It appears to this court that this hesitance is based largely upon a recognition that the amount of damages recoverable in a particular case is an issue which is inherently difficult to conclusively resolve based on briefing alone. Indeed, if this court's review of the facts suggested that plaintiff was entitled to recover $1,700,000 instead of $1,700,062.53, then it would be improper to grant its motion for summary judgment.

Plaintiff maintains that, notwithstanding the fact that defendant has actively opposed its summary judgment motion, the amount which it seeks in this case is, in fact, liquidated and should be considered undisputable. It appears to this court, however, that in seeking *partial* summary judgment on damages, plaintiff is attempting to excise a portion of an overall disputed issue of damages, and this court doubts that this piecemeal approach would prove to be the optimal way of resolving this case. In arguing otherwise, plaintiff writes in its brief that:

> Aluminum Extrusions' admissions establish that it is liable to Aluminicaste in the amount of the principal balance of Aluminum Extrusions' account

> ($1,740,719.07) minus the price of the shipment that Aluminum Extrusions does
> not admit that it received ($40,656.54): $1,700,062.53.

[Plaintiffs' brief at 9].

Plaintiff thus appears to recognize that genuine fact issues exist regarding liability for a *portion* of the aluminum which it claims to have shipped to defendant, and, even if this court were to grant its motion for partial summary judgment, the issue of whether defendant actually received some of the goods would yet to be determined. In its brief, plaintiff is quite vague on how it envisions this action proceeding in the event that its motion for partial summary judgment is granted, and, as far as this court is aware, there may be yet more unresolved issues in this case which are not mentioned in the briefing. This fact makes this court even more hesitant to simply award plaintiff a portion of the damages it seeks in this case, since it seems much wiser to await the presentation of all the evidence before making an award of damages. This court simply does not see the advantage to making a definitive call on a damages issue which can be more reliably determined in a trial setting.

This court's hesitance to simply grant plaintiff's motion is also influenced by the nature of the claims asserted in the complaint, which plaintiff summarizes as follows:

> In this lawsuit, Aluminicaste asserts claims of breach of contract, account stated, open book account, goods sold and delivered, and unjust enrichment, and seeks to recover from Aluminum Extrusions $1,740,719.07, plus prejudgment and post-judgment interest on each outstanding invoice, attorney fees, and costs of collection.

[Plaintiff's brief at 8]. Thus, plaintiff's brief makes reference to no less than five separate claims, namely "breach of contract, account stated, open book account, goods sold and delivered, and unjust enrichment." Moreover, in arguing that it is entitled to partial summary judgment, plaintiff writes that:

> As shown above, Aluminum Extrusions has admitted the following:
>
> • Aluminum Extrusions' receipt of, failure to object to, and failure to pay forty-three invoices totaling $1,836,805.57 for the sale and delivery of the Goods to Aluminum Extrusions, (Ex. D, Def.'s Responses at RFA 87);
>
> • The existence of Agreements for Aluminicaste's sale of Goods to Aluminum Extrusions, the latter of which governed the shipments at issue, (Ex. A, Compl. ¶ 8 and attached Exs. 1, and 2; Ex. B, Ans. ¶ 8); and
>
> • Aluminum Extrusions' receipt of forty-two shipments of Goods to Aluminum Extrusions for a price totaling $1,796,149.03 ($1,836,805.57 - $40,656.54) for which Aluminum Extrusions has not paid, (Ex. D, Def.'s Responses at RFAs 1-76, 79-86; Ex. C, Pl.'s 1st Written Discovery at attached Exs. A-1 through A-43 and B-1 through B-43). These admissions show that there are no disputed material facts and that Aluminicaste is entitled to partial summary judgment as a matter of law in its favor and against Aluminum Extrusions. First, Aluminum Extrusions' admissions unquestionably establish that it is liable to Aluminicaste for breach of contract, account stated, open book account, goods sold and delivered, or unjust enrichment for the forty-two shipments of Goods it acknowledges it accepted but did not pay for. Second, Aluminum Extrusions' admissions establish that it is liable to Aluminicaste in the amount of the principal balance of Aluminum Extrusions' account ($1,740,719.07) minus the price of the shipment that Aluminum Extrusions does not admit that it received ($40,656.54): $1,700,062.53.

[Plaintiff's brief at 8-9].

In the court's view, the most problematic sentence in this argument is plaintiff's assertion that "[f]irst, Aluminum Extrusions' admissions unquestionably establish that it is liable to Aluminicaste for breach of contract, account stated, open book account, goods sold and delivered, or unjust enrichment." The word "or" gives this court particular pause, since it seems to suggest that plaintiff itself is not entirely sure exactly which of the five claims it asserts entitle it to recovery. While this court regards plaintiff's case as being a quite strong one, it believes that it would be well served by tightening up the legal basis of its claims, prior to any trial in this matter.

It seems likely, based on defendant's admissions, that this court will end up awarding

plaintiff a large judgment in this case, in *some* amount. Indeed, it is undisputed that plaintiff shipped a large amount of aluminum billets to defendant, and this court agrees that AE should not simply be allowed to keep the benefits of those shipments without paying for them. In this sense, this court is broadly sympathetic to plaintiff's case. This does not necessarily mean, however, that $1,700,062.53 is the exact amount of damages called for in this case, nor does it mean that this court may simply enter judgment without specifying which of plaintiff's five claims forms the basis for its judgment. As a general practice, any judgment which this court enters typically states exactly what cause of action supports a particular recovery, in what amount. That being the case, this court believes that plaintiff's argument that it is entitled to recover for "breach of contract, account stated, open book account, goods sold and delivered, *or* unjust enrichment" is in need of considerable refinement.

In so stating, this court notes that there is, at least arguably, some degree of tension between the various claims which plaintiff asserts in this case. In particular, plaintiff's claim for "unjust enrichment" appears to sound at least partially in equity, which arguably suggests that it may regard its purely contractual remedies as inadequate. Moreover, given that plaintiff has asserted an equitable claim in this case, it is important to note that defendant's version of events suggests that the equities of this case may not be as clear-cut as plaintiff suggests. In arguing that summary judgment is improper, defendant relies upon an affidavit from its president John King. In explaining his version of the relevant events in this case, King writes as follows:

> 5. For a period of years, AE has purchased secondary aluminum billets from Aluminicaste.
>
> 6. In February of 2015, AE's plant impacted [sic] by a severe power surge caused by an ice storm which caused power lines to touch at the transformer station. The power surge had the effect of shorting out all of AEI's computer equipment,

including all of the computers which guide the machinery which performs the metal extrusion. The effect of this was to shut down the plant for a period of approximately 3 months while AEI negotiated with its insurance carrier over the scope of its claim. During this time, it lost customers who had to take their extrusion business elsewhere.

7. On or about August 21, 2015, a fire broke out and caused considerable damage to AEI's paint line in its plant. The loss of the paint finish line substantially reduced AE's production until approximately January of 2016 when the paint line became operational again. Approximately, eighty five percent (85%) of AE's total business is painted related product. Accordingly, while the paint line was shut down, AE was losing 85% of its normal business flow. This has resulted in a loss of customers which has continued since the paint line was repaired.

8. As a result of the electrical damage and fire damage, AE became delinquent in the payment of its vendors' claims, including Aluminicaste. The source of these problems was communicated to Aluminicaste which was made aware of both the electrical damage and the fire damage. I communicated information concerning the electrical damage to Neil Johnson shortly after the damage occurred in February of 2015. I communicated information concerning the fire damage telephonically to Sander Huang and Alejandro Osoria Cid at Aluminicaste shortly after each event occurred in August of 2015. In September of 2015, Mr. Huang and Mr. Cid visited the AE plant in Senatobia and were shown the fire damage.

9. At all times relevant, AE had a $1,000,000.00 line of credit with Aluminicaste. By approximately August 2015, AE had fully utilized its credit limit. At the same time AE was in default in payment of its invoices to Aluminicaste due to the electrical and fire damage events. Despite the fact that AE's production was down and was in default, Aluminicaste insisted on continuing to ship aluminum billets to AE in excess of AE's credit limit and without receiving purchase orders from AE. I complained about this to Sander Huang, the Vice President of Business Development and Director of Aluminicaste. Mr. Huang advised me on or about September 30, 2015 that Aluminicaste would rather have an account receivable on its books than to retain inventory. As a result of the foregoing, Aluminicaste caused AE to exceed its credit line by approximately $700,062.53. Aluminicaste was aware of AE's inability to pay its invoices at the time shipment was made.

[King affidavit at 1-3].

Thus, King asserts that he "complained" about the continued shipment of aluminum billets, but that plaintiff, through its representative Mr. Huang, decided to send the product

anyway, in amounts which exceeded defendant's credit limit. This court is not prepared to state at this juncture what significance this alleged fact might have in this case, but it at least seems arguable that defendant would be able to persuade it that plaintiff's actions in allegedly shipping goods against the customer's stated wishes should serve to limit its recovery in this case. In making a determination in this regard, this court believes that it would be well served by witnessing the trial testimony of Mr. King and Mr. Huang, in order to personally evaluate the credibility of these two witnesses and their respective version of events. After doing so, this court believes that it will be in a better position to determine to exactly what extent defendant was "unjustly enriched" through its actions in this case. This court thus concludes that triable fact issues exist in this case regarding the extent of plaintiff's damages, and its motion for partial summary judgment will therefore be denied.

It is therefore ordered that plaintiff's motion for partial summary judgment is denied.

So ordered, this, the 13th day of June, 2017.

/s/ MICHAEL P. MILLS
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI